**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONG YANG LI,<br><br>                 Petitioner,<br>    v.<br><br>WARDEN OF THE FEDERAL CORRECTIONAL INSTITUTION LEWISBURG, et al.,<br><br>                 Respondents. | CIVIL ACTION NO. 3:26-CV-00821<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Petitioner, Dong Yang Li ("Li") brings this petition for writ of habeas corpus. (Doc. 1). On March 30, 2026, Li filed the instant petition, requesting that Respondents Warden of the Federal Correction Institution Lewisburg, Secretary of the Department of Homeland Security, and Todd M. Lyons[1] release him from custody at the Lewisburg Federal Correction Institution ("FCI Lewisburg"). (Doc. 1, at 22). On April 14, 2026, Sage filed a response to

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Jessica Sage ("Sage"), Warden of FCI Lewisburg. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Li is detained at FCI Lewisburg, Sage is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Todd M. Lyons and Markwayne Mullin, Secretary of the Department of Homeland Security, are **DISMISSED**. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Li on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

Li's petition, and on April 29, 2026, Li filed a traverse. (Doc. 6; Doc. 7). For the following reasons, Li's petition (Doc. 1) is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Li's petition, Sage's response, and the exhibits thereto. (Doc. 1; Doc. 6). Li was born in the Peoples Republic of China, and he immigrated to the United States with his family around 1979. (Doc. 1, at 3). Li's family was able to immigrate to the United States with the assistance of Li's grandmother, who was a United States citizen. (Doc. 1, at 3). Li received lawful permanent resident status in the United States on January 28, 1981, and Li has lived continuously in the United States for forty-six years. (Doc. 1, at 2). Li married Lisa Yee Li, a naturalized United States citizen in 1991, and they have three United States citizen children, and two United States citizen grandchildren. (Doc. 1, at 3-4). All of Li's family members reside in the United States and are United States citizens. (Doc. 1, at 5). Li has no relatives or friends in China. (Doc. 1, at 5).

In 1999, Li pled guilty to one count of conspiracy to distribute and possess with intent to distribute heroin in the Southern District of New York. (Doc. 1, at 5). INS initiated removal proceedings while Li served his federal sentence. (Doc. 1, at 5-6). Upon completing his federal sentence in 2001, the government transferred Li to immigration detention, and the INS attempted to remove Li to China. (Doc. 1, at 6). China refused to accept Li, and the government released Li under supervised release as "unable to deport." (Doc. 1, at 6). During his twenty-four years of supervised release, Li worked continuously, filed taxes, earned Social Security credits, and reported to every required immigration check-in appointment. (Doc. 1, at 6). Li has also been a caretaker for his United States citizen father since 2004. (Doc. 1, at 4).

On December 14, 2023, Li was arrested in Maine on state drug charges. (Doc. 1, at 6-7). Li pled guilty to unlawful possession of marijuana, and the Maine court sentenced him credit for time served and a fine. (Doc. 1, at 6-7). On May 30, 2025, Li's United States citizen son, filed an I-130 petition for alien relative on behalf of Li, which remains pending. (Doc. 1, at 7). On or about October 1, 2025, Li was arrested and taken into custody by ICE at a scheduled check-in appointment. (Doc. 1, at 7). Li submits that he never received a notice of or a reason for the revocation of his order of supervision, and Li submits that he was not provided with an opportunity to contest his re-detention. (Doc. 1, at 7-8). The government does not provide a reason for its revocation of Li's order of supervision. (Doc. 6, at 2-3).

Three months into his re-detention, Li applied for travel documents to authorize his return to China. (Doc. 6, at 2-3). On January 13, 2026, the government reviewed Li's custody and determined that Li should remain in immigration detention. (Doc. 6, at 3). The government submits that it is processing a travel document for Li. (Doc. 6, at 3). Li has been in ICE custody for seven months, and he is currently detained at FCI Lewisburg. (Doc. 1, at 1, 7).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in

only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan, 385 F. Supp. 3d 349 (S.D.N.Y. 2019)* (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

## III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR").

4

However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil, 164 F.4th at 277-79* (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil, 164 F.4th at 278-79* (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Li's detention after his order of removal became final has become unconstitutionally prolonged and unrelated to the purpose of removal. *Jennings*, 583 U.S. at 294; *Kahlil, 164 F.4th at 274-79*; *Zadvydas*, 533 U.S. at 688.

Conversely, the Court does not have jurisdiction to stay Li's removal to a third country. Section 1252(g) of the INA provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders

5

against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) strips district courts of jurisdiction to review the Attorney General's decision to execute a removal order or actions taken to execute a removal order. *Tazu v. Attorney General United States*, 975 F.3d 292, 298 (3d Cir. 2020). Accordingly, Li's request for the Court to stay removal to a third country is intertwined with the removal process and outside the Court's jurisdiction.

## IV.    DISCUSSION

A. UNDER 8 C.F.R. § 241.13(I)(2), LI'S DETENTION IS AUTHORIZED ONLY IF THE GOVERNMENT CAN SHOW THAT BASED ON CHANGED CIRCUMSTANCES, REMOVAL HAS BECOME SIGNIFICANTLY LIKELY IN THE REASONABLY FORESEEABLE FUTURE.

Li contends that his re-detention violates 8 C.F.R. § 241.4, 8 C.F.R. § 241.13, and the Due Process Clause of the Fifth Amendment because the government failed to adequately articulate facts to support re-detention. (Doc. 1, at 10-13). The government did not address Li's administrative code violation claims, nor did the government articulate any changed circumstances that would justify re-detention. (*See* Doc. 6).

ICE's ability to revoke an order of supervision and re-detain a noncitizen is governed by 8 C.F.R. § 241.13 and § 241.4. "[W]hen an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation." *Leslie v. Attorney Gen. of the United States*, 611 F.3d 171, 180 (3d Cir. 2010); *see Pan v. Oddo*, 3:25-cv-00265, 2025 WL 3960013, at *3 (W.D. Pa. Dec. 1, 2025); *see V.S.P.H. v. Soto*, 25-18835, 2026 WL 371162, at *3 (D.N.J. Feb. 10, 2026). 8 C.F.R. § 241.13 and § 241.4 were created to amend the custody review process following *Zadvydas v. Davis*, 533 U.S. 678 (2001), to protect the due process rights afforded to noncitizens with final orders of removal.

Section 241.13(i) of the Code of Federal Regulations provides that a noncitizen on supervised release may be re-detained if they violate the conditions of their release or if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). According to the regulation, upon revocation of release, it is the government's burden to show there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future. *Pan*, 2025 WL 3960013, at *2 (collecting cases). Section 241.13 also provides that upon ICE's revocation of a noncitizen's order of supervision, ICE will notify the noncitizen of the reasons for revocation and conduct an initial informal interview to afford the noncitizen an opportunity to respond to the reasons for revocation stated in the notification. 8 C.F.R. § 241.13(i)(3).

Section 241.4(l)(2) limits revocation authority to the Executive Associate Commissioner or to a district director when "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Section 241.4(1)(3) also provides that a noncitizen whose supervised release was revoked is entitled to a custody review approximately three months after release is revoked. 8 C.F.R. § 241.4(1)(3).

The parties do not dispute that Li was released from ICE custody on an order of supervision after the government was unable to effectuate his removal in 2001. (Doc. 1, at 6; Doc. 6, at 2). The parties also agree that Li's order of supervision was revoked, and Li was re-detained at a scheduled ICE check-in appointment on October 1, 2025. (Doc. 2, at 7; Doc. 6, at 2). Li provides that he received no notice of the government's reasons for revocation and that he was not afforded an interview or opportunity to respond to the government's reasons

for revocation, as required by 8 C.F.R. § 241.4(l)(1) and 8 C.F.R. § 241.13(i)(3). Li also provides that, upon information and belief, no authorized official made or approved the revocation decision as required by 8 C.F.R. § 241.4(l)(2) and that no three-month interview occurred as required by 8 C.F.R. § 241.4(1)(3). (Doc. 1, at 12-13). The government has not identified that Li violated his order of supervision or that there has been a change in circumstances between Li's release in 2001 and re-detention in 2025. (*See* Doc. 6). In fact, the government provides that it did not have Li complete a travel document application to help effectuate his removal to China until two months into his re-detention. (Doc. 6-3, at 3). The government also does not claim that Li received an initial interview or other opportunity to respond to the government's reason for revocation. (*See* Doc. 6). The government has not identified the official who revoked Li's order of supervision, nor has it produced any revocation paperwork. (*See* Doc. 6). While, the government did indicate that ICE officials conducted a custody review for Li on January 13, 2025, the government did not identify the regulatory basis for the custody review, nor did the government produce the decision letter resulting from the custody review. (Doc. 6-3, at 3).

On the record before the Court, the government has not made a showing under 8 C.F.R. § 241.13(i)(2) that circumstances have changed such that there is a significant likelihood of Li's removal to China in the reasonably foreseeable future. The government has also failed to provide any information on whether an authorized officer revoked Li's order of release. *See* 8 C.F.R. § 241.4(l)(2). Finally, ICE failed to comply with its own regulations by not providing Li with an opportunity to respond to the government's reasons for revocation nor the appropriate three-month custody review. *See* 8 C.F.R. § 241.4(l)(1), (3); *see* 8 C.F.R. § 241.13(i)(3). Therefore, the Court finds that the government failed to comply with its own

procedures before re-detaining Li, in violation of his due process rights. *See Pan*, 2025 WL 3960013, at *3; *see V.S.P.H.*, 2026 WL 371162, at *3; *see also Leslie*, 611 F.3d at 180.

    B.  UNDER *ZADVYDAS*, LI PROVIDES GOOD REASON TO BELIEVE REMOVAL IS UNLIKELY IN THE REASONABLY FORESEEABLE FUTURE.

Li contends that his re-detention also violates section 1231 of the INA because there is not a significant likelihood of his removal in the reasonably foreseeable future. (Doc. 1, at 8-10, 14-17) To support his contention that removal is not reasonably foreseeable Li provides that China has refused to accept Li for twenty-six years, DHS's own records document China's history of systematic non-cooperation, and Li's lacks documents showing Chinese citizenship. (Doc. 1, at 14). Li submits that DHS's January 12, 2021, strategic action plan to counter the threat posed by the People's Republic of China states that China has ignored more than 1,300 ICE requests for travel documents since October 2017; ICE classified China as fully uncooperative in 2016, 2020, and 2024; and ICE only removed 288 Chinese nationals in fiscal year 2023 and 517 in fiscal year 2024, a removal rate of about .5 to 1.3 percent per year. (Doc. 6, at 14). Li also submits that he has no Chinese national identification card, Chinese birth certificate, or Chinese passport because he left China as a minor child and has lived in the United States for forty-six years. (Doc. 6, at 15).

The government counters that Li has failed to make a good showing that there is no significant likelihood of his removal in the reasonably foreseeable future because Li has applied for a travel document and his removal is progressing. (Doc. 6, at 5). The government avers that it will remove Li to China in the reasonably foreseeable future. (Doc. 6, at 6). In his traverse, Li counters that the government's conclusory declaration that a travel document is being processed and that removal is likely is not enough to rebut his showing that there is not a significant likelihood of removal in the reasonably foreseeable future. (Doc. 7, at 15).

9

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether such post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumed reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six-month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable and order release. *Zadvydas*, 533 U.S. at 699-700. Courts in the Third Circuit have found that China is uncooperative in repatriating its citizens removed from the United States and that a Chinese birth certificate is a prerequisite

to China issuing a travel document for repatriation.[2] *Pan*, 2025 WL 3960013, at *4; *Lo v. Noem*, No. 3:25-cv-493, 2026 WL 1045389, at *1 (W.D. Pa. April 17, 2026); *Xu v. Bondi*, No. 25-16274, 2026 WL 34682, at * 3 (D.N.J. Jan. 6, 2026); *see Lee v. Oddo*, 25-452J, 2026 WL 523154, at *3 (W.D. Pa. Feb. 25, 2026).

Li has been re-detained under 8 U.S.C. § 1231 for over seven months, while the government has attempted to obtain travel documents for his removal. (Doc. 1, at 12; Doc. 4, at 4). Li's presumptively reasonable six-month period of § 1231 detention has run. *Zadvydas* 533 U.S. at 701. By providing evidence of China's documented history of non-cooperation in repatriating Chinese citizens removed from the United States and evidence of Li's lack of documents required to obtain a travel document from China, Li has shown good reason to believe removal is unlikely in the reasonably foreseeable future. (Doc. 1, at 14-16); *see Pan*, 2025 WL 3960013, at *4; *see Lo*, 2026 WL 1045389, at *1; *see Xu*, 2026 WL 34682, at * 3; *see also Lee*, 2026 WL 523154, at *3.

To rebut Li's showing, the government provides that Li's removal is progressing because Li applied for a travel document five months ago, on December 3, 2025. (Doc. 6, at 5). The government contends that Li's removal is imminent. (Doc. 6, at 5). However, the government's argument focuses on its contention that the burden has not shifted to the

---

[2] In *Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. 2005), the Third Circuit found that Joseph, a noncitizen from Antigua-Barbuda with a final order of removal, failed to show that his removal was unlikely in the reasonably foreseeable future because DHS had requested travel documents and the issuing country expressed a willingness to issue the travel documents and had advised that travel documents would be forthcoming. *Joseph*, 127 F. App'x at 81. While the Court acknowledges the holding in *Joseph*, the case is distinguishable from Li's because of the individualized process for and history of repatriation of Chinese citizens removed from the United States. *See e.g., Pan*, 2025 WL 3960013, at *4. Further, the Chinese government has not expressed a willingness to issue travel documents to Li. While the government anticipates Li's travel documents, China has not advised that Li's travel documents will be forthcoming. *See* (Doc. 6, at 6).

government because Li failed to provide evidence to show good reason why removal is unlikely in the reasonably foreseeable future. (Doc. 6, at 6). The government only rebuts Li's showing *in arguendo*. (Doc. 6, at 6). While Li completed a travel document application on December 3, 2025, the government provides no indication that the application has been sent to China or when the application will be approved. (*See* Doc. 6). Li's removal has been "progressing" for seven months, with no end in sight. (Doc. 1, at 14-16). The government's assertion that China will issue a travel document for Li in the reasonably foreseeable future without any evidence in support is speculative and fails rebut Li's showing. (Doc. 6, at 6). *See Pan*, 2025 WL 3960013, at *4; *see Lo*, 2026 WL 1045389, at *1; *see Xu*, 2026 WL 34682, at *3; *see also Lee*, 2026 WL 523154, at *3. Accordingly, Li's petition for writ of habeas corpus is **GRANTED**.[3] (Doc. 1).

V.    CONCLUSION

For the foregoing reasons, Li's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Sage is **ORDERED** to release Li from custody and restore the conditions of his prior supervisory release. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

---

[3] The Court notes that Li seeks relief in the form of attorney's fees and costs. (Doc. 1, at 23). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016). (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025). (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Li must request attorney's fees in a separate motion with accompanying exhibits.

BY THE COURT:

Dated: May 8, 2026

/s/ Karoline Mehalchick
KAROLINE MEHALCHICK
United States District Judge

13